UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Emmy Buboltz,                                                                              Civ. No. 19-1027 (PAM/BRT)

           Plaintiff,

v.                                                                              **MEMORANDUM AND ORDER**

County of Blue Earth,

           Defendant.

---

This matter is before the Court on Defendant's Motion for Summary Judgment. (Docket No. 18.)  For the following reasons, the Motion is granted.

## BACKGROUND

Plaintiff Emmy Buboltz brings a claim under the Equal Pay Act ("EPA") against her former employer, the County of Blue Earth ("the County").  Buboltz graduated from William Mitchell College of Law in 2002, and thereafter worked as a paralegal at Maschka, Riedy & Ries.  (Buboltz Dep. (Docket No. 23-1) at 8-9.)  In May 2004, she obtained her law license, but continued working as a paralegal while doing some mixed attorney and paralegal work for the firm.  (Id. at 10-11.)  From April 2005 to September 2006, she clerked for Blue Earth County Judge Norbert Smith.  (Id. at 11.)

In November 2006, Buboltz began working as a half-time Assistant County Attorney ("ACA") in the County's Juvenile Division, while working half-time as a prosecutor for the City of Mankato.  (Id. at 11.)  Starting on January 1, 2008, Buboltz began working full-time as an ACA for the County.  (Id. at 11-12; Elvebak Decl. (Docket No. 20) at 1.)

In 2013, then-Blue Earth County Attorney Ross Arneson asked the state court to find that the County budget failed to meet the statutory mandate to pay ACAs appropriately. (2013 Blue Earth County Order (Docket No. 23-9).) In September 2013, the state court concluded that the County failed to consider comparable county data and used a flawed classification system. (Id.) Two years later, after continued litigation, the new Blue Earth County Attorney, Pat McDermott, and the County Board of Commissioners held a settlement conference. The ACAs' union requested a step system over a merit system or pay range. (Stipulation (Docket No. 23-12) at 1.) As requested, the new salary schedule included a step system.

In February 2015, McDermott placed the seven ACAs on the new step-system salary schedule according to how long they had worked in any county attorney's office.[1] (McDermott Dep. (Docket No. 23-5) 31-32, 48.) Although judicial-clerkship experience was listed as a preferred qualification for an ACA position, McDermott did not consider it in placing attorneys on the salary schedule. As a result, Buboltz and one of her male colleagues, Christopher Rovney, were placed lower on the salary schedule than they expected. Buboltz met with McDermott in February 2015 to discuss her concern. (Buboltz Dep. at 32.)

---

[1] In his deposition, McDermott also stated that he considered how long the ACAs had been licensed attorneys, but that it did not play a role in their placements on the salary schedule. (McDermott Dep. at 40.) Even so, the length of time that each ACA had been licensed correlates with their placement on the salary schedule. (Feb. 2015 ACA List (Docket No. 23-22).)

On March 17, 2015, the County Board and McDermott entered into a stipulation regarding the ACAs' 2015 salary schedule, placement on that salary schedule, and back pay for 2012 through March 2015. (Stipulation at 1-3.) The stipulation stated that the ACAs met with their union representative and agreed to the salary schedule and their placement on the schedule. (Id. at 4-5; see also Docket No. 23-21 (Union Representative Email stating, "On Friday, March 6 the Blue Earth Assistant County Attorney's union voted to accept the attached pay plan, respective placement on the salary grids and the retroactive payments.").)

The following month, the County Board of Commissioners sent the stipulated agreement to the state court. (April 10, 2015 Lepak Letter (Docket No. 23-12) at 1-2.). The ACAs' union also wrote to the presiding Judge explaining that union members disagreed with certain aspects of the stipulation, including the refusal to pay interest. (April 16, 2015 Joppa Letter (Docket No. 23-13).) Because the union was not a party to the underlying proceeding, the state court accepted the stipulation between the County Board and McDermott on May 6, 2015. (2015 Blue Earth County Order (Docket No. 23-7).)

On May 29, 2015, Buboltz filed an official grievance with the County disputing her placement on the salary schedule, claiming disparate treatment. (Buboltz Grievance (Docket No. 23-14).) Rovney also grieved his placement. (Rovney Grievance (Docket No. 23-17).) McDermott and the County Administrator denied the grievances, concluding the matters were not grievable. (Docket Nos. 23-15, 16, 18.) After an unsuccessful mediation before the state Bureau of Mediation Services, neither Buboltz nor Rovney

3

further pursued their grievances. Buboltz's employment ended February 26, 2018. (Elvebak Decl. at 3.)

Buboltz alleges that male attorneys were paid more than female attorneys from March 2015 through February 26, 2018, in violation of the EPA. 29 U.S.C. § 206(d). The County moves for summary judgment, arguing that: (1) Buboltz's claim is time-barred; (2) Buboltz fails to establish a prima facie case for unequal pay; (3) if a prima facie case exists, pay disparity is based on experience, not sex; and (4) Buboltz waived her right to judicial review for failing to exhaust the administrative remedies of the collective bargaining agreement ("CBA").

## DISCUSSION

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

### A.     Failure to Exhaust CBA Remedies

The County argues that Buboltz's claim is barred by the ACAs' union's CBA, because she failed to pursue her claim in arbitration. The CBA's plain language belies this argument, however. "[A]n agreement to arbitrate statutory antidiscrimination claims" must be "explicitly stated in the collective-bargaining agreement." 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 258 (2009) (quotation and citation omitted). Here, the CBA includes a grievance procedure and arbitration agreement concerning its "interpretation or application." (2014-15 CBA (Docket No. 25-14) at 9.) The CBA provides that "any matters governed by statutory or regulatory provisions, except as expressly provided for in this AGREEMENT, shall not be considered grievances under this AGREEMENT." (Id. at 10.) The CBA also explains that employees may use only the grievance procedure or another procedure, not both, unless otherwise required by state or federal law. (Id.)

"[T]he question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate a particular grievance—is undeniably an issue for judicial determination." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986). While the ACA salary schedule is attached to the CBA, the CBA is silent as to placing ACAs on that schedule. (2014-15 CBA at 14-17.) The salary schedule is only referenced with respect to yearly wage increases. (Id.) Because express provisions govern placing ACAs on the salary schedule, doing so was not a union decision and did not involve "interpretation or application" of the CBA. Therefore, it does not trigger the CBA's grievance procedure.

5

Buboltz and the County's partial participation in the grievance process does not mean that Buboltz's concern was not grievable in the first instance. When Buboltz attempted to grieve that her placement on the salary schedule violated "past practice and existing County Policy creating disparate treatment and effectively demoting" her (Buboltz Grievance), McDermott denied her grievance, stating that the "implementation of the new pay schedule is in accordance with a binding District Court Order and is therefore not subject to grievance or arbitration by the Union." (McDermott Letter (Docket No. 23-15).) The County similarly determined that the matter was not grievable. (Grievance Denial (Docket No. 23-16).) When asked what remedies may have been available for ACAs to challenge their placement on the 2015 salary schedule, McDermott testified, "I don't know what remedies they would have available. I suppose they could have sued the county. I suppose they could have went [sic] to arbitration." (McDermott Dep. 72:7-14.)

The County now asserts that because Buboltz did not further pursue her grievance in 2015, she cannot now litigate it. The Court does not look kindly on the County espousing one legal position during the grievance process and now arguing for the opposite legal position. Regardless, the CBA does not prevent Buboltz from litigating her claim. The County's argument as to exhaustion is unavailing.

**B.    EPA Statute of Limitations**

An employer violates the EPA when it discriminates between employees on the basis of sex by paying a female employee less than a male employee for performing equal work in jobs that "require[] equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). An EPA suit must be

6

commenced within two years after the cause of action accrued, or three years after the cause of action accrued if the violation is willful. Id. § 255(a). "A finding of willfulness requires behavior on the part of the employer that exceeds negligence; the employer must act knowingly or with reckless disregard of whether the contested conduct was prohibited." Simpson v. Merchants & Planters Bank, 441 F.3d 572, 580 (8th Cir. 2006).

The County argues that Buboltz's claim accrued on May 6, 2015, when the state district court accepted the stipulated agreement and accompanying salary schedule. Buboltz knew she had a claim at that time because on May 29, 2015, she filed an official grievance with the County disputing her placement on the salary schedule as disparate treatment. (Buboltz Grievance.) Thus, the County argues that Buboltz's claim expired May 6, 2017, or May 6, 2018, if she can prove a willful violation.

While Buboltz could have brought her claim in May 2015, when she was originally placed on the salary schedule, a separate claim accrued each time she received an allegedly inadequate paycheck. See Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 168 (8th Cir. 1995) (overruling on other grounds recognized by Rowe v. Hussmann Corp., 381 F.3d 775, 782 n.6 (8th Cir. 2004)); Thomeczek v. Brownlee, 320 F. Supp. 2d 884, 887 (E.D. Mo. 2004); Inglis v. Buena Vista Univ., 235 F. Supp. 2d 1009, 1022–24 (N.D. Iowa 2002); Holt v. Deer-Mt. Judea Sch. Dist., 135 F. Supp. 3d 898, 903 (W.D. Ark. 2015). Buboltz filed her Complaint on April 15, 2019. Thus, if Buboltz prevails, she may recover for allegedly unequal paychecks dating back to April 15, 2017, or April 15, 2016, if she can show willfulness.

## C.     Prima Facie Case

In an EPA case, "[a] plaintiff must first establish a prima facie case that women were paid less than men in the same establishment for equal work requiring equal skill, effort, and responsibility and performed under similar working conditions." Price v. N. States Power Co., 664 F.3d 1186, 1191 (8th Cir. 2011).  If a plaintiff establishes a prima facie case, the burden shifts to the defendant to prove one of four statutory affirmative defenses. Id.  The defendant employer must demonstrate that the gender-wage differential is "pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).  The defendant must prove that the pay differential was based on a factor other than sex, and unlike in the Title VII context may not merely cite a legitimate non-discriminatory reason for that differential. Taylor v. White, 321 F.3d 710, 716 (8th Cir. 2003); see also Tenkku v. Normandy Bank, 348 F.3d 737, 741 n.2 (8th Cir. 2003) ("At the summary judgment stage of the proceedings, the employer's justification for the differences is irrelevant, unless it is strong enough to establish one of the statutory affirmative defenses as a matter of law.").

To establish her EPA claim, Buboltz must provide "sufficient evidence" that the County paid different salaries to men and women for equal work performed under similar conditions. Tenkku 348 F.3d at 741 n.2.  Minnesota Statute § 388.10 mandates ACA job duties and therefore all ACAs, regardless of gender, perform equal work under similar conditions.  Thus, Buboltz must merely demonstrate that male ACAs were paid more than

8

female ACAs.  Horn v. Univ. of Minnesota, 362 F.3d 1042, 1045 (8th Cir. 2004).  This she cannot do.

In her deposition, Buboltz alleged two male comparators, Steven Kelm and Michael Hanson, whom she claimed were paid more for doing substantially similar work.  Kelm and Buboltz were both placed on the 2015 salary schedule at step 6.  (Elvebak Decl. at 3.)  On May 6, 2015, her step anniversary, Buboltz moved up to a step 7.  Kelm likewise moved up to step 7 on his step anniversary five months later, in October 2015.  (Id.)  Because Kelm was paid either the same as Buboltz or slightly less because his step anniversary followed hers, he fails as a comparator.

Hanson similarly is not a comparator, although he was placed at step 12 on the 2015 salary schedule, while Buboltz was placed at step 6.[2]  (Feb. 2015 ACA List at 2.)  Hanson's placement above Buboltz on the salary schedule comported with McDermott's singular criterion of time spent in a county attorney's office.[3]  Hanson received credit for working in another county attorney's office for more than three years, as well as working at the County for more than a year longer than Buboltz.[4]  Hanson, therefore, had four years' more experience working in a county attorney's office than Buboltz did.

---

[2] This step difference shows the limited and erroneous nature of McDermott's criterion, considering that Hanson and Buboltz were both at step 10 on the previous salary schedule. (Elvebak Decl. at 1-2.)

[3] Further, on June 1, 2015, Hanson moved to a different salary schedule because he was promoted to a supervisor position, so Buboltz's damages period would be limited to the period of time in 2015 when Hanson and Buboltz were on the same salary schedule. See Ashley, 66 F.3d at 168.

[4] Buboltz was hired part time in November of 2006 and full time in January 2008, while Hanson was hired full time in August 2005. (Elvebak Decl. at 1-2.)

9

Buboltz fails to show that any male ACA with the same commensurate experience was paid more for similar work. McDermott had a singular—perhaps misguided—focus when placing ACAs on the salary schedule: their time in a county attorney's office. He failed to attribute value to a state judicial clerkship or any other legal experience when calculating experience levels of ACAs despite job postings listing it on equal footing to assistant county and city attorney experience. But Buboltz does not offer any evidence that any male ACA received credit for this type of legal experience when she did not. McDermott's narrow criterion is not evidence of an Equal-Pay-Act violation simply because Buboltz is a woman.[5] No genuine dispute of material fact exists, and she cannot prevail on this issue. The County is entitled to judgment as a matter of law.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** Defendant's Motion for Summary Judgment (Docket No. 18) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 21, 2020

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge

---

[5] Notably, on the 2015 salary schedule, a female earned the highest salary and a male earned the lowest. (Feb. 2015 ACA List.)